By the Court,
Bronson, J.
It was held at one time that a general covenant for quiet enjoyment extended to a tortious eviction. (Mountford v. Catesby, Dyer, 328, (a).) But it had been decided as early as the Year Book, 26 H. 8, that a covenant of warranty was not broken by the entry of a wrong-doer, because no mischief arises to the lessee, inasmuch as he may have an action of trespass or ejectment against him who ousted him; but if the lessee be *111 ousted by one who has a title paramount, against whom he has no remedy, he may bring covenant against the lessor. (2 Saund. 178, note 7.) And it is now settled, that in an action upon a general covenant for quiet enjoyment, the plaintiff must aver and prove that the person by whom he was evicted had a lawful title to the property; and that he had such title before or at the time of the conveyance by the defendant. It must be both a lawful, and a superior title. (Wotton v. Hele, 2 Saund. 177, and Sergeant Williams’ note (10) to that case. Greenby v. Wilcocks, 2 John. 1. Webb v. Alexander, 7 Wend. 281. Beddoe’s executor v. Wadsworth, 21 Wend. 120.) And for the precedent of a declaration on such a covenant, see 2 Chit. Pl. 546, ed. of ’37, and p. 547, note (i). In the case at bar the plaintiff has properly averred, that Richard Bond the elder had a paramount title to the property at the time the defendants made the lease and covenant to Samuel and Joseph Bond in 1789; and that certain of the heirs at law of Richard, having lawful right and title as such heirs, have entered and evicted the plaintiff from three equal undivided sixth parts of the property by due process of law. The defendants have by their pleas, put in issue the alleged superior title of Richard Bond the elder, and those claiming under him; and the question is, whether the plaintiff has made out his case by proof.
The plaintiff, when he gave the bills of exceptions in the two ejectment suits in evidence, declared that he did so for the sole purpose of showing how the plaintiffs in those actions claimed title; and he insists now, that the defendants cannot use the evidence for any other purpose. I do not see how this position can be maintained. The bills of exceptions show, not only how Daniel Bond and others claimed title, but on what ground they recovered; and the bills are in their own nature as good evidence to prove the one fact, as they are to prove the other. The whole of each of those documents was laid before the jury, and the plaintiff could not, by any preliminary declaration of his object, control the legal effect of the evidence, or prevent *112 the defendants from using such parts of it as might answer their purpose. If the case is to be finally decided on the-demurrer as it now stands, we must either reject the bills altogether—- and then the plaintiff has clearly failed to make out a right of action—or else we must take the whole of the evidence and see how the matter will then stand.
If we look at the whole of the evidence, it appears that the plaintiff has been evicted by persons claiming title as heirs at law of Richard Bond the elder, who was in possession of the property, claiming as owner before the lease was executed. But it-does not appear that they recovered on the ground that Richard Bond the elder, or those claiming under him, had a title superior to that of the defendants. On the contrary, it was proved in the ejectment suits, that the legal title to the property was in the defendants at the time they made the lease in 1789. This was established by the patent from the colonial government to Bradt and Wemp, in 1737, and the deed from the patentees to the defendants two months afterwards. No other paper title was shown. It was proved that the widow of Richard Bond the elder said her husband had deeds of the land from Plaats and the Dutch Church ; but no such deeds were produced. If what the widow had said about her husband’s title was competent evidence against any body, it was, at the most, only evidence to characterize the possession, and show that her husband claimed as owner; and that fact was sufficiently established by other proof.
The title of the defendants had not been barred by an adverse possession at the time the lease was made. No account is given of the possession prior to 1775, and only fourteen years from that time had elapsed before the lease to Samuel and Joseph Bond was executed. It is averred in the declaration, and was admitted on the trial, that the lessees immediately entered under the lease, and that the possession was continually held under that title until the plaintiff was evicted in 1835.
The plaintiff has neither shown that he was evicted on the ground of a superior title in Richard Bond the elder *113 and those claiming under him, nor that there was in fact any such title. Daniel Bond and others recovered in the ejectment suits on the ground that Samuel and Joseph Bond, and those claiming under them, were not at liberty to set up the title which they acquired from the defendants. Having received the possession originally from their father, they were by that fact, and their subsequent acts and declarations, estopped from denying his title when asserted by the other heirs at law. Upon this state of facts, I am unable to see how the present action can be maintained. The defendants had a good title to convey when they made the lease, and it was either the fault or the misfortune of the lessees that they were not in a condition to protect themselves under that title.
The plaintiff has not been evicted on the ground that Richard Bond the elder had a superior title to the property; and although upon this demurrer to evidence, we are to draw every inference in favor of the plaintiff which the jury would have been warranted in making, and to turn doubtful points in his favor, I am unable to say, that in point of fact, Bond had any such superior title. His possession was adverse to the church, because he claimed the property as his own; but he had not held long enough to bar an entry before the lease was executed and possession taken under it. If he had a paper title, that could only be established by producing the deeds or accounting for their absence.
But it is said that as the defendants had notice, and were requested to defend the ejectment suits, they are now es-topped from setting up their title; and that question remains to be considered. Whether the defendants took part and aided the plaintiff in the defence of the suits brought against him, does not appear; but they must at least have furnished him with the means of setting up their title, for it was given in evidence on the trial. And this case is, I think, plainly distinguishable from those to which we have been referred in relation to the effect of notice, fort he reason that the defendant’s title was not only in *114 evidence in the former suits, but it was virtually admitted to be a good title. The plaintiffs in those actions did not recover on the ground that their right was superior to that of the Dutch Church, but on the ground that the defendant in those suits was precluded by the acts and declarations of his immediate grantors from sheltering himself under the good title of the church. If the defendants, on receiving notice of a suit upon a title apparently superior to theirs, had neglected to appear and defend, and their title had not been given in evidence, or if when in evidence it had been adjudged defective, they would probably be estopped from setting it up in answer to an action on the covenant. But that is not this case.
There is a short, and, I think, conclusive view of this question. The plaintiff has necessarily averred that he was evicted by persons having a title paramount to that of the defendants. Upon that averment issue has been joined. The plaintiff holds the affirmative, and the burden of proof lies upon him. He has not only failed to prove the averment true, but in attempting to do so, he has proved it false. It was not enough for the plaintiff to show that he gave the defendants notice of the suits brought against him, for the obvious reason that the claimants may have recovered on a right or title subordinate that of the defendants. It was necessary, therefore, for the plaintiff to go further, and show on what ground the claimants succeeded. He did so; and the evidence has proved fatal to his cause.
Upon this view of the case the defendants are entitled to judgment. But I must recur once more to the circumstances under which the bills of exceptions were given in evidence. The plaintiff’s counsel declared at the time, that the bills were given in evidence for the purpose of showing that the plaintiffs in the ejectment suits claimed title by descent from Richard Bond the elder, paramount to the title of the defendants; and not for any other purpose. To this course no objection was taken on the part of the defendants, nor did they intimate the wish or inten *115 tian of making any other use of the evidence. But by after-wards demurring to the evidence, they have spread the whole upon the record; and they now insist that the bills not only show how the plaintiffs in those actions claimed title, but on what ground they recovered. The present plaintiff complains, with some appearance of justice, that this course operates as a surprise upon him, and says he would have given further evidence on the trial if the defendants had taken their ground at the time the bills of exceptions were laid before the jury. We know from another case which has been before us, that the plaintiff could have given further evidence tending to show a paramount title in Richard Bond the elder, if he had supposed it necessary to do so; and under the special circumstances of this case, I think the ends of justice will be better answered by ordering a new trial, than they would be by rendering judgment on the demurrer.
Should the plaintiff ultimately fail in this action, he will not be without the means of redress. The title which he derived through Samuel and Joseph Bond from the Dutch Church has not failed. The point decided in the ejectment suits was, that as Samuel and Joseph Bond had received the possession from their father, neither they, nor their grantee, could set up a title subsequently acquired from a stranger, until the possession had been restored. When the heirs of Richard Bond the elder regained the possession, the estoppel was at an end, and the plaintiff was at liberty to bring a new action founded upon his title. Whether the statute relating to the action of ejectment will present any obstacle to a recovery, is a question not now before us.
The bill of exceptions presents but a single question. I think the judge was right in following the rule of damages which was laid down in Kinney v. Watts, (14 Wendell, 38.) It is there said by Sutherland, J. that as the lessee paid no purchase money, he can recover none back upon eviction; and in .respect to the improvements he may have made upon the premises, and the money expended upon *116 them, he stands precisely upon the same footing with a purchaser, who recovers nothing for improvements or expenditures. (See also Moak v. Johnson, 1 Hill, 99, and Baldwin v. Munn, 2 Wendell, 399.) Under a general covenant for quiet enjoyment, the rule of damages is settled in relation to a purchaser who has been evicted. He recovers back the consideration money paid for the land, with interest on the amount for a period not exceeding six years. The price agreed upon by the parties is taken as the true value of the land without any reference to the actual value. Following that analogy, the rents reserved in a lease, where no other consideration is paid, must be regarded as a just equivalent for the use of the demised premises. The parties have agreed so to consider it. In case of eviction, the rent ceases; and the lessee is relieved from a burden which must be deemed equal to the benefit which he would have derived from the continued enjoyment of the property. Having lost nothing, he can recover no damages. He is, however, entitled to the costs he has been put to; and as he is answerable to the true owner for the mesne profits of the land for a period not exceeding six years, he may recover back the rent he has paid during that .time with the interest thereon. If this rule will not always afford a sufficient indemnity to the lessee, I can only say, as has often been said in relation to a purchaser, he should protect himself by requiring other covenants.
New trial granted, on the payment of costs by the plaintiff. If the costs are not paid, then judgment for the defendants.
Rule accordingly.